53 A.3d 664

FELIX MANGUAL, PLAINTIFF–RESPONDENT, v. LAZAR BEREZ-INSKY, DEFENDANT–RESPONDENT, AND ESSEX SURGERY CENTER, LLC, DEFENDANT–APPELLANT, AND GEICO (A/K/A GOVERNMENT EMPLOYEES INSURANCE COMPANY), ESSEX PAIN MANAGEMENT GROUP, INTA–BORO, XYZ CORP. D/B/A INTA–BORO, ABC CORP. D/B/A INTA–BORO TWO WAY CAR RADIO, INTA–BORO TWO WAY CAR RADIO, INTA–BORO TWO WAY RADIO ASSOCIATION INC., AND INTA–BORO ACRES INC., DEFENDANTS.

JUDITH MANGUAL AND FELIX MANGUAL, PLAINTIFFS–RE-SPONDENTS, v. LAZAR BEREZINSKY, DEFENDANT–RE-SPONDENT, AND GEICO (A/K/A GOVERNMENT EMPLOYEES INSURANCE COMPANY), INTA–BORO, XYZ CORP. D/B/A INTA–BORO, ABC CORP. D/B/A INTA–BORO TWO WAY CAR RADIO, INTA–BORO TWO WAY CAR RADIO, INTA–BORO TWO WAY RADIO ASSOCIATION INC., AND INTA–BORO ACRES INC., DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued February 28, 2012—Decided July 23, 2012.

300

Before Judges PAYNE, REISNER and ACCURSO.

*Thomas M. Mulcahy* argued the cause for appellant (*Purcell, Mulcahy, O'Neill & Hawkins,* attorneys; *Mr. Mulcahy,* of counsel and on the brief; *Michael F. O'Neill* and *Danielle H. Bohlen,* on the brief).

*Brian G. Steller* argued the cause for respondent Lazar Berezinsky (*Connell Foley,* attorneys; *Mr. Steller,* of counsel; *Christopher Abatemarco,* on the brief).

*Eric G. Kahn* argued the cause for respondents Felix and Judith Mangual (*Javerbaum Wurgaft Hicks Kahn Wikstrom & Sinins,* attorneys; *Mr. Kahn,* of counsel and on the brief).

The opinion of the court was delivered by

ACCURSO, J.S.C. (temporarily assigned).

This interlocutory appeal arises out of a car accident in which plaintiffs suffered catastrophic injuries. On leave granted, defendant Essex Surgery Center, L.L.C. (Essex) appeals from two partial summary judgment orders in favor of plaintiffs in these consolidated cases, one determining that defendant Lazar Berezinsky (Berezinsky) was Essex's agent, and the other that Berezinsky was liable for the accident in which plaintiffs were injured. Although we affirm the order on liability, we reverse the order on

agency, concluding that whether Berezinsky was acting as Essex's agent at the time of the accident is a question for the jury.

While returning home from a shopping trip on Saturday, June 7, 2008, at about 12:30 in the afternoon, plaintiffs Felix and Judith Mangual's 1971 Chevy Nova had overheated, and they had pulled onto the shoulder of Route 280 in Orange. The day was clear and dry and the traffic very light. They were standing on the shoulder outside their disabled car when a Lincoln Town Car driven by Berezinsky slammed into them. The force of the impact propelled the Manguals' car into Mrs. Mangual and trapped Mr. Mangual between it and the Town Car. Mr. Mangual suffered a broken leg and anterior meniscus tears in both legs in the accident. Mrs. Mangual's injuries required that both her legs be amputated below the knee.

The evidence adduced on the cross-motions for partial summary judgment on agency filed by plaintiffs and Essex shows that at the time of the accident, Berezinsky was driving Galina Komarov and her daughter home after Mrs. Komarov had an out-patient procedure performed by Dr. Gary Gorodokin at non-party Roseland Ambulatory Surgery Center (Roseland). Berezinsky had been hired to drive Mrs. Komarov to and from her appointment by Abram Stekolshchik (referred to by the parties, and by us hereinafter, as Arkady). Arkady was employed by Essex.

Essex is an out-patient surgical center limited to pain management procedures, which in 2008 was open only on Tuesdays and Wednesdays. Essex employed a full-time administrator and director of nursing, a handful of clerical workers and a dispatcher, Arkady, but had few other full-time employees. The physicians who performed procedures at Essex were not paid by the surgical center but by their patients or their insurance providers. Essex paid the ten or fifteen nurses who worked on Tuesdays and Wednesdays on a per diem basis.

Essex is a limited liability company formed in 2005. Richard Lipsky, M.D., serves as its non-member unpaid manager. Dr. Lipsky's ex-wife and two daughters are the sole members of ELR

Realty, L.L.C., the limited liability company that owns Essex. Dr. Lipsky's ex-wife and two daughters are also the sole members of a different limited liability company, LER Realty, L.L.C., which owns 35% of Roseland Med Realty, L.L.C., the L.L.C. that owns Roseland. The other 65% of Roseland Med Realty, L.L.C. is owned by Complete Surgical Project Management, L.L.C., of which Dr. Lipsky is a 50% member. Dr. Lipsky also serves as the manager for Roseland, which, like Essex, has a full-time administrator and director of nursing but few other W–2 employees. A number of the nurses who work on a per diem basis at Essex also work on the same basis at Roseland.

Dr. Lipsky testified at deposition that Essex provided transportation for all patients undergoing treatment at Essex. He explained that the high patient volume attendant to a pain management practice made patient transportation necessary in order to protect the day's schedule. In other words, the only way to insure that patients appeared on-time for their tightly scheduled appointments was for the facility to provide them transportation. Dr. Lipsky testified that the transportation was costly and was paid by Essex and not by the physicians using the facility. Arkady arranged for all patient transportation for Essex using a pool of approximately fifty drivers culled from limousine services who would drive for Essex on the side. Berezinsky was one of those drivers.

Berezinsky was a member of a limousine service cooperative in Ozone Park, New York called Inta–Boro Two–Way Radio Car (Inta–Boro). He testified at deposition that he owned the Town Car that he was driving on the day of the accident and that it was registered in his name in New York at Inta–Boro's location, which he considered his work address. Berezinsky has also owned a taxi medallion in New York City since 1988. Berezinsky's 1099–Miscellaneous Income Statements from Inta–Boro reveal that he received nonemployee compensation of $59,387.80 in 2006; $51,406.46 in 2007; and $44,772.35 in 2008. For those same

periods, Berezinsky received from Essex, $14,025; $18,290; and $13,910, respectively.

Berezinsky testified that Arkady began calling him in 2006 to transport patients to and from Essex. He had no contract or set schedule; he would simply drive for Essex when Arkady needed him. Berezinsky drove for Essex on his own behalf and not for Inta–Boro. Arkady would call him a day or so ahead of time with the name and address of the patient and the time of pick-up. Berezinsky picked up the patient in his own car and drove to Essex where Arkady would assign other trips. Berezinsky maintained and repaired his own car and chose the routes of travel. Essex paid him by the hour and not by the trip. Berezinsky testified that Essex paid him $35 an hour and did not reimburse him for gas or tolls. Dr. Lipsky, however, testified that Essex paid the drivers an additional $35 for gas on the days they worked. Berezinsky testified that Arkady would give him a check from Essex for the hours he worked at the end of each shift or the next time he drove. Essex issued Berezinsky a 1099–Miscellaneous Income Statement at the end of each year.

In 2007, Dr. Lipsky and others formed an L.L.C. to purchase Roseland and began renovating that out-patient surgical center. Roseland re-opened in early 2008 on a six-day a week schedule. Pain management procedures were performed at Roseland primarily on Tuesdays. Unlike at Essex, however, the procedures performed at Roseland extended beyond pain management to include orthopedics, general surgery, gastroenterology and urology. Although Dr. Lipsky testified that transportation for Roseland patients not undergoing pain management procedures was discouraged, it is undisputed that transportation was on occasion provided for such patients, like Mrs. Komarov.

Mrs. Komarov's gastroenterologist, Dr. Gorodokin, testified that the majority of his gastroenterology patients at Roseland availed themselves of the transportation service. He said that the service was a convenience to some patients, but that he chose Roseland because of the facility and would probably continue to use it were

transportation services not provided. Dr. Lipsky testified that the provision of transportation services was not an inducement to doctors to perform procedures at either Essex or Roseland because the other centers they competed against provided the same service.

Although Roseland arranged for transportation for at least some of its patients in 2008, it did not employ its own dispatcher. Arkady, although employed only by Essex, was also responsible for arranging all patient transportation for Roseland in 2008. Arkady used the same pool of drivers that he drew on for Essex for patient transportation to and from Roseland. Berezinsky testified that he began driving patients to Roseland in 2008 and that he worked from Roseland approximately twenty times before the day of the accident. Berezinsky was paid by Essex for that work. Dr. Lipsky testified that these expenses, including Arkady's services, were among those initially paid by Essex on Roseland's behalf upon Roseland's start-up in 2008, but were reimbursed to Essex at the end of the year after Roseland had established its own revenue stream.

Applying the factors established in *Miklos v. Liberty Coach Co.,* 48 *N.J.Super.* 591, 138 *A.*2d 762 (App.Div.1958), to these largely undisputed facts, the motion judge determined that no rational factfinder could find that Berezinsky was an independent contractor and not acting as Essex's agent while driving Mrs. Komarov at the time of the accident. We disagree.

■ Summary judgment is only appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *R.* 4:46–2(c). We review the grant of summary judgment using the same standard as the motion judge. *Prudential Prop. & Cas. Ins. Co. v. Boylan,* 307 *N.J.Super.* 162, 167, 704 *A.*2d 597 (App.Div.), *certif. denied,* 154 *N.J.* 608, 713 *A.*2d 499 (1998). Thus, we must determine "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of

the non-moving party." *Brill v. Guardian Life Ins. Co. of Am.*, 142 *N.J.* 520, 540, 666 *A.2d* 146 (1995). Our review of the facts adduced on the motions convinces us that, when viewed in the light most favorable to Essex, the evidence is sufficient to allow a rational factfinder to resolve the agency question in its favor.[1]

New Jersey has adopted section 220 of the *Restatement (Second) of Agency* "as the touchstone" for determining whether one acting for another acts as a servant or agent, or as an independent contractor. *Carter v. Reynolds*, 175 *N.J.* 402, 408, 815 *A.2d* 460 (2003). Section 220 provides:

(1) A servant is a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control.

(2) In determining whether one acting for another is a servant or an independent contractor, the following matters of facts, among others, are considered:

(a) the extent of control which, by the agreement, the master may exercise over the details of the work;

(b) whether or not the one employed is engaged in a distinct occupation or business;

(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

(d) the skill required in the particular occupation;

(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

(f) the length of time for which the person is employed;

(g) the method of payment, whether by the time or by the job;

(h) whether or not the work is a part of the regular business of the employer;

(i) whether or not the parties believe they are creating the relation of master and servant; and

(j) whether the principal is or is not in business.

[*Restatement (Second) of Agency* § 220 (1958).]

---

[1] Cross-motions for summary judgment do not necessarily preclude the existence of fact issues. *See Great Atl. & Pac. Tea Co. v. Checchio*, 335 *N.J.Super.* 495, 502, 762 *A.2d* 1057 (App.Div.2000) (proofs on cross-motions for summary judgment in contract dispute not sufficient to permit summary disposition in favor of either party).

This test is reflected in our Model Jury Charge on Agency, *Model Civil Jury Charges 5.101(A) (Revised 8/2011)*, and in *Miklos v. Liberty Coach Co.*, the case relied upon by the motion judge. *Miklos, supra,* 48 *N.J.Super.* at 602, 138 *A.*2d 762.

We have no quarrel with the motion judge's reliance on *Miklos*. Where we part company with the motion judge is in his determination that applying *Miklos* to these facts leads inescapably to only one conclusion. The motion judge determined on the basis of facts adduced on the motions that Arkady exercised "an expansive control" over Berezinsky's actions at the time of the accident; that Berezinsky was not engaged in an occupation distinct from that of a surgical center; that Essex contributed to Berezinsky's operational costs by paying him an additional $35 for gas, despite Berezinsky's assertion to the contrary; that livery service is a part of Essex's regular surgical center business; and that Essex, although not considering Berezinsky as its agent, held him out to Mrs. Komarov as such, notwithstanding that Mrs. Komarov was undergoing a procedure not performed at Essex, at a different facility under separate ownership from Essex, and by a doctor that was unaffiliated with Essex.

■ We do not determine that no rational jury could arrive at the same conclusions from these facts, but only that a rational jury could as readily conclude the opposite, that is, that Berezinsky was acting as an independent contractor. Although the facts may be largely, but not completely, undisputed, the inferences that may be drawn from these facts vary greatly. As Judge Pressler noted, "a trial court should never decide on its merits a dispute on which a rational jury could go either way." Pressler & Verniero, *Current N.J. Court Rules*, comment on *R.* 4:46–2 (2012); *see Gilhooley v. Cnty. of Union*, 164 *N.J.* 533, 545, 753 *A.*2d 1137 (2000) (only when the evidence is utterly one-sided may a judge decide that a party should prevail as a matter of law); *Gilborges v. Wallace*, 153 *N.J.Super.* 121, 133–34, 379 *A.*2d 269 (App.Div.1977), *aff'd in part* and *rev'd in part* 78 *N.J.* 342, 396 *A.*2d 338 (1978) (partial summary judgment on agency entered in error where material

facts, and inferences that could be drawn from the facts, disputed). This appears to us to be just such a case in which a rational jury could go either way. Accordingly, we conclude that the entry of summary judgment was inappropriate and that the issue of whether Berezinsky was acting as Essex's agent at the time of the accident must be determined by a jury.

■ Essex also contends that the trial judge erred in entering summary judgment for plaintiffs on liability, relying on *Eaton v. Eaton*, 119 *N.J.* 628, 575 *A.2d* 858 (1990). Specifically, Essex contends that plaintiffs are not entitled to a presumption of negligence simply from the happening of the accident and that *Eaton* requires that any inference of negligence from the facts is for the jury, and not the judge, to draw. We disagree that the motion judge accorded plaintiffs a presumption of negligence on the mere occurrence of the accident or that *Eaton* requires that the jury draw the inference of negligence on these facts.

*Eaton* involved a wrongful-death action arising out of a one-car accident in which a mother and her daughter were the only occupants. When the investigating officer arrived at the scene, he found the daughter, who had sustained only minor injuries, outside the car which had left the roadway and overturned. Her mother was trapped on the passenger side. The daughter claimed her mother was driving when she swerved to avoid a phantom vehicle and lost control of the car. The mother, who several days later succumbed to her injuries, told the officer that her daughter had been driving at the time of the accident. The investigating officer concluded from the physical evidence at the scene and the mother's statement, that the daughter had been the driver.

The daughter subsequently pled guilty to careless driving and paid a fine. At trial, she could not recall anything about the accident. The jury determined that she, and not her mother, had been the driver, but found that she had not been negligent and a no cause verdict was entered. On appeal, the Supreme Court reversed, finding plain error in the trial court's failure to give a res ipsa loquitur charge.

Here, the evidence on the motion, viewed most favorably to Berezinsky [2], reveals that he was traveling east on Route 280 in the left middle lane at midday on the day of the accident. The day was clear and dry and the traffic very light; indeed, Berezinsky stated that there was "no traffic." According to Berezinsky and his passengers, he was driving normally and in accord with "all traffic regulations" just before the crash.

Berezinsky had traveled this stretch of highway over a hundred times and was aware that "[t]here were many holes in the road." He testified that as he was traveling at fifty to fifty-five miles per hour down the highway, the Town Car suddenly pulled to the left toward the divider. Although Berezinsky initially testified that he "felt as though one of [his] wheels got in the hole in the road," he subsequently clarified his testimony to say that he had not said "that I went to the hole. I said I felt as if I am. I felt as if I'm tripped." As he tried to straighten the car, it began to spin or rotate to the right while still continuing forward. The Town Car spun 180 degrees and crossed the two right lanes before slamming into the Mangual's car along its side as it was parked on the right shoulder. Berezinsky testified that he never saw the Manguals' car until the "last moment at the time when I just flew onto it."

Although Berezinsky was originally of the opinion that the accident was caused by a sudden mechanical failure, the defense abandoned that view after consulting with experts who were unable to identify any defect. In his answers to interrogatories, Berezinsky stated that the Town Car suddenly started spinning "for unknown reasons."

Compare these facts to the Supreme Court's description of the proofs in *Eaton*.

---

[2] Berezinsky did not oppose the motion in the trial court. His counsel advised the motion judge that Berezinsky had abandoned a defense of mechanical failure after consultation with experts, and while denying driver error or inattentiveness, could simply offer no explanation for the happening of the accident. Our review of his deposition transcripts confirms that representation.

> Thus, the posture of the proofs at the close of the trial was that the jury could accept one of two versions of the happening of the accident. The first was [the daughter's] version that at the time of the accident her mother had been the driver, and that the accident had been caused by the "phantom vehicle." The second version, supported by the police investigation, [the mother's] statement, and the physical evidence, was that [the daughter] had been the driver, and that no other vehicle had been involved.
>
> [*Eaton, supra,* 119 *N.J.* at 634–35, 575 *A.*2d 858.]

It was the "second version" of the accident based on "[s]ubstantial, although circumstantial, evidence" of the Eaton car leaving the roadway with such momentum that it became airborne and crashed into trees fifty feet away before overturning, that allowed the inference of negligence on the part of the daughter driver and required the res ipsa charge to the jury.[3]  *Id.* at 639, 575 *A.*2d 858.

In both this case and in *Eaton,* plaintiffs relied on circumstantial evidence to attempt to establish defendant's negligence.  But we perceive the difference between these two cases to be obvious and outcome determinative;  in *Eaton* there were two versions of the accident for the jury to consider.  Here, in contrast, Berezinsky has no explanation for the happening of the accident, leaving only one version and, thus, nothing for a jury to decide.

■  We first address Essex's contention that plaintiffs did not make out a prima facie case of negligence.  As the Supreme Court noted in *Eaton,* "[a]s a general rule, in the absence of negligence, mechanical failure, or collision with another vehicle, a motor vehicle does not leave the road and cause damage or injury." *Eaton, supra,* 119 *N.J.* at 638, 575 *A.*2d 858.  "[T]he unexplained departure of a car from the roadway 'ordinarily bespeaks negligence.' " *Id.* at 639, 575 *A.*2d 858 (citing *Buckelew v. Grossbard,* 87 *N.J.* 512, 526, 435 *A.*2d 1150 (1981)).  Although plaintiffs have not expressly relied on the doctrine of res ipsa loquitur in framing their proofs, we understand this to be a res ipsa case.  We,

---

[3] The error was the trial judge's failure to charge the jury that if it found that the daughter had been driving and had not been forced off the road by the phantom car, it might draw an inference of negligence from the circumstances. *Eaton, supra,* 119 *N.J.* at 637, 575 *A.*2d 858.

disagree, however, that its characterization as such should deprive plaintiffs of the entry of summary judgment on these facts.

As the Supreme Court explained in *Lorenc v. Chemirad Corp.*, 37 *N.J.* 56, 70, 179 *A.*2d 401 (1962), res ipsa loquitur "is simply an emanation of the basic legal doctrine that a verdict in a negligence case may rest on circumstantial evidence." The doctrine:

> symbolizes a permissible presumption of negligence from the plaintiff's proof, that is to say, an allowable inference of the defendant's want of due care where (a) the occurrence itself ordinarily bespeaks negligence; (b) the instrumentality was within the defendant's exclusive control; and (c) there is no indication in the circumstances that the injury was the result of the plaintiff's own voluntary act or neglect. The rule has its foundation in probability and the procedural policy of placing the onus of producing evidence upon the party who is possessed of superior knowledge or opportunity for explanation of the causative circumstances. The presumption arises where the circumstances furnish reasonable grounds for the inference that if due care had been practiced by the person having control of the instrumentality causing the injury, the mishap would not have occurred. If the circumstances are such as will, unexplained, sustain the inference of negligence as reasonably probable, a prima facie case is made, and the issue goes to the jury.
>
> [*Kahalili v. Rosecliff Realty, Inc.*, 26 *N.J.* 595, 606, 141 *A.*2d 301 (1958).]

Application of the rule permits an inference of negligence that can satisfy plaintiff's burden of proof, thereby enabling a plaintiff to survive a motion to dismiss at the close of his or her case. *Eaton, supra,* 119 *N.J.* at 638, 575 *A.*2d 858.

Plaintiffs moved for partial summary judgment on liability based on Berezinsky's car leaving the roadway and causing them injury in the absence of mechanical failure, hazardous roadway conditions or collision with another vehicle. Thus, contrary to Essex's contention, plaintiffs have not based their case merely on the happening of the accident, they have put forth competent, albeit circumstantial, proofs allowing the inference of negligence against Berezinsky, thereby establishing a prima facie case. *Eaton, supra,* 119 *N.J.* at 638, 575 *A.*2d 858.

In accordance with our summary judgment procedure, it was thus incumbent on Essex to come forward and identify the existence of a genuine issue of material fact whose resolution in its

favor would ultimately entitle Berezinsky to judgment. *R.* 4:46–2(b); *R.* 4:46–5(a); *Brill, supra,* 142 *N.J.* at 540, 666 *A.*2d 146. This, Essex failed to do. It relied on Berezinsky having denied that he was negligent and his and his passengers' testimony that he was driving normally just before the Town Car went out of control. We agree with the motion judge that *Rule* 4:46–5 requires more than the mere denial of negligence, in the face of a plaintiff's prima facie case, to defeat the motion. *See Robbins v. Jersey City,* 23 *N.J.* 229, 241, 128 *A.*2d 673 (1957) (where prima facie claim warranting summary judgment is established, the party opposing the motion must "demonstrate by competent evidential material that a genuine issue of fact exists").

Notwithstanding its failure to identify any genuine issue for trial, Essex maintains that summary judgment was inappropriate because *Eaton* requires submission of the issue of Berezinsky's negligence to the jury. We disagree and conclude that Essex's reliance on *Eaton* is misplaced.

█ Essex is correct that the cases discussing the doctrine of res ipsa loquitur hold that the presumption allowed by the rule creates a permissive inference of a want of due care that a jury "may, but need not, draw." *Lorenc, supra,* 37 *N.J.* at 71, 179 *A.*2d 401. The presumption does not shift the burden of proof; "the inference is still one for the jury and not for the court, and the jury may reject it as not of such quality as would move reasonable men to judgment in favor of the tendered hypothesis, even where there is no explanation by defendant." *Kahalili, supra,* 26 *N.J.* at 606, 141 *A.*2d 301. Essex reasons that because the inference is only permissive, the case cannot be decided by the court, but must go to the jury, even in the absence of disputed facts. We disagree that this case should be treated differently from any other on a motion for summary judgment.

█ Plaintiffs established, by circumstantial evidence, a prima facie case of negligence sufficient to withstand a *Rule* 4:37–2(b) motion to dismiss. Under the reformulated standard for summary judgment established in *Brill,* this same showing is sufficient to

carry plaintiff's burden on a motion for summary judgment. The task of the motion judge then is to determine whether "'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Brill, supra,* 142 *N.J.* at 536, 666 *A.*2d 146 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 *U.S.* 242, 251–52, 106 *S.Ct.* 2505, 2512, 91 *L.Ed.*2d 202, 214 (1986)).

Certainly there are res ipsa cases, that is, cases in which plaintiffs have rested their proofs on circumstantial evidence allowing for an inference of defendant's lack of due care, in which the facts are either in dispute, such as in *Eaton,* or are not so one-sided that one party must prevail as a matter of law. In such cases, summary judgment would not be appropriate because the facts, or the inferences to be drawn from those facts, when viewed most favorably to the defendant, could support a judgment in defendant's favor. *Brill, supra,* 142 *N.J.* at 540, 666 *A.*2d 146. *Eaton* is obviously such a case and is thus factually distinguishable.

But given the posture of this case on the motion, specifically, Berezinsky's inability to offer any explanation for his car spinning out of control in light traffic and leaving the roadway on a clear and dry day, striking and injuring the Manguals as they stood outside their disabled car on the shoulder, we agree with the motion judge that neither the evidence, nor the inferences that could be drawn from the evidence, presented any issue for a jury and that plaintiffs were entitled to judgment as a matter of law. No rational, fair-minded jury, on these facts, could conclude anything other than that Berezinsky negligently lost control of his car. His own testimony allows for no other inference. *Cf. Dolson v. Anastasia,* 55 *N.J.* 2, 10, 258 *A.*2d 706 (1969) (A following car is obligated to maintain a reasonably safe distance behind the car ahead, having due regard for speed, traffic and condition of the highway. "Failure to do so resulting in a collision, *is* negligence and a jury should be so instructed.").

Affirmed in part; reversed in part and remanded.