**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4518-17T4

JOSEPHINE NEHER, SHAVONNE
BURNETT and LAURA SIMMONS,

     Plaintiffs-Appellants,

v.

EARL C. HOPKINS,

     Defendant/Third-Party Plaintiff,

 and

GANNETT COMPANY, INC.,
d/b/a THE COURIER-POST,

     Defendant-Respondent,

v.

TARON SMITH and COLLEEN
M. COOK,

     Third-Party Defendants.

_____

Submitted August 13, 2019 – Decided August 22, 2019

Before Judges Sumners and Moynihan.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-4871-15.

Peter J. Mc Namara, attorney for appellants.

Rudolph & Kayal, PA, attorneys for respondent (Stephen A. Rudolph, on the brief).

PER CURIAM

Plaintiffs Josephine Neher, Shavonne Burnett and Laura Simmons appeal from the trial court's order granting summary judgment to defendant Gannett Company, Inc., doing business as (d/b/a) The Courier-Post (defendant),[1] and dismissing plaintiffs' complaint with prejudice. Plaintiffs argue the trial court erred by ruling that defendant was not vicariously liable to plaintiffs because Earl C. Hopkins – who, while delivering the Courier-Post newspaper, allegedly collided with the vehicle in which plaintiffs were passengers, causing them personal injury and resulting "financial losses, pain and suffering" and other damages – was an independent contractor of defendant, not its employee. Reviewing the trial court's grant of summary judgment de novo, applying the same standard governing the trial court under Rule 4:46-2(c), Brill v. Guardian

---

[1] We utilize the most common name used for defendant in the order granting summary judgment. We note defendant refers to itself as Gannett Satellite Information Network, LLC d/b/a Courier-Post in its submissions to this court and the Law Division. It is not apparent from the record that a motion to amend defendant's name was made or granted. See R. 4:9-3.

A-4518-17T4

Life Ins. Co. of Am., 142 N.J. 520, 539-40 (1995), and "consider[ing] whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party," id. at 540; see also R. 4:46-2(c), we affirm.

"Although as a general rule of tort law, liability must be based on personal fault, the doctrine of respondeat superior recognizes a vicarious liability principle pursuant to which a master will be held liable in certain cases for the wrongful acts of his servants or employees." Carter v. Reynolds, 175 N.J. 402, 408 (2003). "Under respondeat superior, an employer can be found liable for the negligence of an employee causing injuries to third parties, if, at the time of the occurrence, the employee was acting within the scope of his or her employment." Id. at 408-09. An employer is liable if an employer-employee relationship existed and the employee's tortious act "occurred within the scope of that employment." Id. at 409.

In contrast, "[o]rdinarily, an employer that hires an independent contractor is not liable for the negligent acts of the contractor in the performance of the contract." Bahrle v. Exxon Corp., 145 N.J. 144, 156 (1996). Vicarious "[l]iability may be imputed to a principal for the actions of independent

contractors . . . where the principal retains control of the manner and means of doing the work that is the subject of the contract."[2]  Basil v. Wolf, 193 N.J. 38, 63 (2007).

> "In such a case the employer is responsible for the negligence of the independent contractor even though the particular control exercised and its manner of exercise had no causal relationship with the hazard that led to the injury,[3] just as in the case of a simple employer-employee situation."  Under that test, the reservation of control over the equipment to be used, the manner or method of doing the work, or direction of the employees of the independent contractor may permit vicarious liability.
>
> [Mavrikidis v. Petullo, 153 N.J. 117, 135 (1998) (citation omitted) (quoting Bergquist v. Penterman, 46 N.J. Super. 74, 85 (App. Div. 1957)).]

---

[2]  Liability may also be imputed in situations not here in issue:  "where the principal engages an incompetent contractor; or . . . where the activity constitutes a nuisance per se."  Wolf, 193 N.J. at 62.

[3]  Defendant argues in Point II of its merits brief that the trial court's grant of summary judgment should be affirmed because there is no evidence that it acted negligently or was the proximate cause of the accident in which plaintiffs were injured.  That issue was not raised to the trial court and we will not consider it.  Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) (holding appellate courts "will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available").

Plaintiffs contend Hopkins, who delivered the Courier-Post pursuant to an "Independent Contractor Agreement Delivery Service" (the Agreement) with defendant,[4] was defendant's employee because it retained control over Hopkins's work. Specifically, plaintiffs argue Hopkins: was required to deliver the Courier-Post "in a certain order" and "by a certain time" specified by defendant; was "subject to significant fines if he [did] not show up to work on a particular day"; could "not be terminated without cause," and would be paid "one month[']s pay if [defendant] wanted to terminate the Agreement"; and would be paid additional compensation for every subscription that originated from his solicitation.

We perceive defendant exercised only "a general power to supervise [defendant's] work," to ensure the newspapers were delivered in a timely manner. Marion v. Pub. Serv. Elec. & Gas Co., 72 N.J. Super. 146, 153 (App. Div. 1962). Because "the supervision related only to the results and not to the method of doing the work," defendant was not vicariously liable for plaintiffs' damages. Ibid. (quoting Trecartin v. Mahony-Troast Const. Co., 18 N.J. Super. 380, 386-87 (App. Div. 1952)).

---

[4] The "Company" with which Hopkins contracted is "Courier-Post," the appellation handwritten in the agreement.

The Agreement, the terms of which we review de novo, Kieffer v. Best Buy, 205 N.J. 213, 222-23 (2011), provided that Hopkins had a daily 6:00 a.m. deadline, except for a 7:00 a.m. Sunday deadline, for delivery of the newspaper "in consideration of its perishable nature."  It also provided that defendant was to provide Hopkins with a "Delivery List" "of [l]ocations in the [d]elivery [a]rea that have requested service for delivery" of the newspaper but "[t]he Delivery List is not in an order of requested or required delivery but may include the transmittal of requests or complaints from a subscriber or [l]ocation relating to delivery service."  As such, defendant did not control Hopkins's mode or method of delivery.

Although plaintiffs contend their argument that defendant controlled Hopkins's delivery is supported by one sentence in Hopkins's deposition testimony – in which he responded affirmatively to the question, "And on that route sheet, does it tell you what house should be delivered first and what order you should go in?" – they do not clarify how Hopkins's view reconciled with the Agreement's terms, particularly those dealing with customer complaints which may have altered the order of delivery.  Further, Hopkins deposed that additions and deletions from his route would be reflected in additional computer printout sheets that were provided with his daily stacks of papers and which he used to

update the route sheet. Common sense dictates that delivery to added subscribers would follow Hopkins's route and that delivery would not occur at the end of his route simply because the new customer's sheet was added to the end of the route sheet. And that single answer does not present a sufficient disputed fact that would defeat summary judgment. See Gilhooley v. Cty. of Union, 164 N.J. 533, 545 (2000) (holding when the evidence is utterly one-sided, a judge may decide that a party should prevail as a matter of law).

Moreover, the nature of the relationship between Hopkins and defendant supports the conclusion that Hopkins was an independent contractor. The self-titled "Independent Contractor Agreement" specifically provided: "CONTRACTOR ACKNOWLEDGES THAT CONTRACTOR IS AN INDEPENDENTLY ESTABLISHED BUSINESS AND FULLY AND FREELY INTENDS TO CREATE AN INDEPENDENT CONTRACTOR RELATIONSHIP WITH [DEFENDANT] UNDER THIS AGREEMENT" and paragraph 3 of the Agreement expounded:

> 3. Independent Contractor. Contractor and Company intend and agree that Contractor will be acting under [the] Agreement as an independent contractor.
>
> > a) Not an employee. Contractor is not an employee of Company. Under no circumstances will Contractor, or anyone performing the Contractor's obligations under [the] Agreement,

7

be included in any employee benefit plan of Company and Contractor waives any right to be so included.

b) Established Independent Business. Contractor acknowledges that Contractor has an established independent business to provide delivery related services.

c) Control of Activities. Company and Contractor acknowledge that the means, method, and control of the activities governed by [the] Agreement shall remain at the discretion of the Contractor. Contractor is free, and is encouraged, to increase the number of delivery [l]ocations within the [d]elivery [a]rea. Contractor is free to purchase Contractor's own equipment and supplies wherever Contractor chooses, including at Contractor's option from Company, with the exception of bags supplied by an advertiser or another publisher and provided by Company, which Contractor agrees to use. Otherwise, Contractor has the option of inserting copies of [p]ublications into poly bags . . . . Contractor has no obligation to attend any Company meetings.

Although such a provision alone is not definitive, see Mavrikidis, 153 N.J. at 133, it is undisputed that Hopkins utilized his wife's vehicle which he or his wife insured. Defendant did not pay Hopkins for any vehicle-related expenses in accordance with paragraph 3(e) of the Agreement and the vehicle did not bear the Courier-Post's logo or other markings identifying the newspaper. The parties to the Agreement agreed in Paragraph 3(d) that Hopkins would be treated "as an

independent contractor and direct seller and not as an employee under all applicable laws for federal, state and local purposes"; it is not disputed that taxes were not deducted from Hopkins's payments from defendant, as would be the case if he was an employee. He received a 1099 form from defendant and was responsible to pay all taxes.

Further evidence that defendant controlled only the result of the delivery operation is Hopkins's "right to engage in any other business that does not interfere with the performance of [the] Agreement, including the delivery of other [p]publications or products" and his ability to "employ or contract with other persons to assist in the performance of [the] Agreement," including the "exclusive control" to "engage a substitute or subcontractor" at Hopkins's expense to make deliveries if Hopkins chose not to, as long as Hopkins was "solely responsible for the performance of [the] Agreement." The Agreement specified defendant was not responsible to obtain a substitute delivery person. The "significant fines" plaintiffs claim support their employer-employee argument are actually liquidated damages imposed "not as a penalty," calculated by the amount of newspapers Hopkins failed to deliver.

Additional contract terms, including those requiring Hopkins to provide a commercial bond or security deposit to secure his performance under the

Agreement and to indemnify and hold harmless defendant for claims and damages arising from Hopkins's performance of the Agreement are atypical to an employer-employee relationship.

We determine plaintiffs' remaining arguments, including those related to the Agreement provisions about termination of the agreement and solicitation of business, are without sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(1)(E). We add only that the termination clause was mutual to both parties and the business-solicitation clauses provided incentives for Hopkins's actions independent of any requirements – including quotas or goals – or supervision by defendant. Those provisions did not reserve any right to defendant to control Hopkins's delivery methods. We further find such insufficient merit in any argument related to inapposite cases cited by plaintiffs where the alleged employer exercised complete control over the employee. See, e.g., De Monaco v. Renton, 18 N.J. 352, 355-56 (1955) (concluding that "an independent contractor who had a franchise or exclusive right from the two newspaper companies to distribute" newspapers "exercised full control over all the newsboys, even to the extent of telling them precisely where they were to stand and sell the papers").

The evidence in this case clearly belies the existence of an employer-employee relationship or that defendant maintained control over Hopkins's delivery methods except those related to the end-product: timely delivery of the newspaper. The facts here are so completely one-sided that a rational jury could not come to any conclusion other than the one reached by the trial court in granting summary judgment in defendant's favor. Mangual v. Berezinsky, 428 N.J. Super. 299, 308 (App. Div. 2012).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11

A-4518-17T4