**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2207-20

RONALD A. AGUIRRE,

    Plaintiff-Appellant,

v.

TOWNSHIP OF LONG HILL,

    Defendant-Respondent.

_____

Submitted February 17, 2022 – Decided July 20, 2022

Before Judges Alvarez and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-2354-18.

McHugh & Imbornone, PA, attorneys for appellant (Salvatore Imbornone, Jr., on the briefs).

Dorsey & Semrau, attorneys for respondent (Fred Semrau and Jonathan Testa, of counsel and on the brief; Gabrielle J. Canaie, on the brief).

PER CURIAM

Plaintiff Ronald Aguirre appeals from a March 26, 2021 order granting defendant Township of Long Hill's motion for summary judgment and dismissing plaintiff's complaint with prejudice. We reverse and remand for trial.

We discern the following facts from the record. On November 19, 2017, plaintiff was staying with his then girlfriend, whose home is located at the corner of North Avenue and Chestnut Street in Stirling. Between 10:00 a.m. and 11:00 a.m. the girlfriend's dog escaped out of the back door. Plaintiff and his girlfriend went outside to look, the two separated, and went in opposite directions. Plaintiff testified that after going south on Chestnut Street past approximately three or four houses, he turned around because his girlfriend had found her dog.

As plaintiff was walking back to the house, he did not see any obstructions or potholes on Chestnut Street, but he did observe a lot of leaves. Because there are no sidewalks in the area, plaintiff was forced to walk in the roadway. Prior to turning around, plaintiff was walking in the center of the road because there was no traffic; however, once he turned around, he walked a foot or two away from the curb to avoid oncoming traffic. Plaintiff alleged when he approached the southeast corner of Chestnut Street and North Avenue, he stepped in a hole next to a storm drain inlet with his right foot. Plaintiff admitted that prior to stepping in the hole, he was not looking down. The hole was covered with

leaves, and he "probably went down at least five to seven to eight inches." After his right foot got caught in the hole, he was trying to maintain his balance because he "collapsed to one knee." He also recalled the "excruciating" and "unimaginable" pain he felt in his right ankle. After a few minutes, plaintiff managed to get up and limp back to the house.

During his deposition, plaintiff did not recall defendant or anyone doing any work in the area immediately prior to the incident. His girlfriend also did not see any construction on North Avenue between June 2016 and November 2017, or any obstructions or holes in the street in the area where plaintiff was injured. She did not witness plaintiff fall.

Immediately following the incident, plaintiff decided not to call an ambulance. Within a week, however, plaintiff saw Dr. Marc Silberman, who diagnosed a right ankle medial malleolar fracture. Dr. Steven L. Nehmer opined that plaintiff's injuries were causally related to his fall on November 19, 2017. Plaintiff has since undergone several medical treatments and surgeries, but according to Dr. Nehmer, a prognosis for a full recovery is poor. During his deposition, plaintiff testified he walks with a cane.

Roughly a week after the incident, plaintiff took photographs of the condition with his iPhone. At no point did he or anyone measure the condition.

A-2207-20

On November 30, 2018, plaintiff filed a complaint seeking damages for injuries he sustained after the November 19, 2017 fall.  More than six months prior, plaintiff served a notice of claim upon defendant as required by N.J.S.A. 59:8-1 et seq.  On January 2, 2019, defendant filed an answer.

On February 20, 2020, Alessandro Gallo, defendant's director of public works, was deposed.  Gallo testified that defendant has an online reporting system where citizens can notify the town of defects in the road, and the system has reports from as early as 2015.  Gallo stated that in 2016 and 2017 there were no reports regarding the vicinity of Chestnut Street and North Avenue.  Gallo confirmed that all employees were instructed to keep a look out for unsafe conditions on the roadways and to report such conditions to Gallo or the foreman.  If there were reports from the online system or from an employee, then the condition would be repaired, with or without being inspected prior.  Gallo also testified that in 2015 he did a minor repair to the structure around the storm sewer at the intersection of Chestnut Street and North Avenue.  Gallo explained the repair involved digging up the area around the storm sewer grate and subsequently filling in the cut out with stone and topping it with asphalt.  Gallo stated he dug down about a foot.  Finally, Gallo testified that he inspected the area of the incident roughly eight months prior to his deposition.  At the time

4

of his inspection, Gallo did not observe any holes and indicated that no further work had been done to the area. Gallo did observe a roughly three or four inch indentation, which he said was caused by settling. Additionally, both parties provided expert reports.

On February 19, 2021, after discovery concluded, defendant filed a motion for summary judgment seeking a dismissal of the complaint with prejudice. At the summary judgment hearing on March 19, 2021, defendant argued plaintiff failed to show that the alleged hole was a dangerous condition, that the defendant had notice of the condition, and that defendant's actions were palpably unreasonable. Plaintiff in turn argued his expert explained that Gallo's way of repairing the area back in 2015 was the wrong way to do the job and created the condition that led to the accident in 2017. Plaintiff contended that the photographs he took showed there was a sinkhole next to the area in which Gallo repaired. Regarding whether defendant's actions were palpably unreasonable, plaintiff stated, "that's a jury question."

On March 26, 2021, the judge granted defendant's motion for summary judgment and dismissed plaintiff's complaint with prejudice in an order and written decision. In his written decision, the judge determined summary judgment was appropriate because

5

even in viewing the evidence in the light most favorable to [p]laintiff as the non-moving party, the evidence is insufficient here to support a finding that [d]efendant had actual or constructive notice of the alleged dangerous condition or that the Township acted in a "palpably unreasonable" manner by not addressing the alleged pothole upon which [p]laintiff allegedly fell.

The judge also found "insufficient evidence to submit the issue of 'dangerous condition' to a jury."

Regarding the issue of notice, the judge relied on the fact that defendant has an electronic pothole reporting system and that defendant had "no record of any prior complaints and/or reports of any potholes at the location alleged in the [c]omplaint." Further, the judge reasoned that the pothole was not "of such a large, open, and obvious nature that the Township should have or could have been aware of its existence by way of exercising due diligence." The judge stressed that no one formally measured the pothole.

The judge then stated "[a]ssuming arguendo that the work was performed poorly or negligently, there is no evidence whatsoever that the claimed negligence caused the condition, and there is no evidence that the condition constituted a 'dangerous condition' under the [Tort Claims Act]." The judge explained "[b]ecause the location was examined by experts retained by the parties long after the November 2017 accident had occurred . . . there is nothing

A-2207-20

contained in any of the experts' reports that supports a finding that a dangerous condition existed in November 2017."

Finally, the judge found that "[p]laintiff offer[ed] nothing to show that the condition was clearly obvious and glaring before the accident, such that the Township's failure to notice it and repair it was palpably unreasonable." This appeal followed.

On appeal, plaintiff presents the following arguments for our consideration:

> POINT I
>
> THE ORDER GRANTING SUMMARY JUDGMENT TO THE DEFENDANT AND DISMISSING THE COMPLAINT AS A MATTER OF LAW SHOULD BE [REVERSED] BECAUSE THE INFERENCES OF FACT WEIGHED IN THE PLAINTIFF'S FAVOR WOULD ALLOW A JURY TO FIND THE DEFENDANT LIABLE UNDER THE [TCA] FOR A DANGEROUS CONDITION OF PUBLIC PROPERTY
>
>> A. The Defendant's Motion For Summary Judgment Should Have Been Denied Because The [Inferences] of Fact Weighed In the Plaintiff's Favor Would Allow A Jury To Find That The Hole Located On The Roadway Was A Dangerous Condition Of Public Property
>>
>> B. The Defendant's Motion For Summary Judgment Should Have Been Denied

7

Because The [Inferences] of Fact Weighed In the Plaintiff's Favor Would Allow A Jury To Find That The Dangerous Condition Of Public Property Was A Proximate Cause Of The Plaintiff's Injuries

C. The Defendant's Motion For Summary Judgment Should Have Been Denied Because The [Inferences] of Fact Weighed In the Plaintiff's Favor Would Allow A Jury To Find That The Dangerous Condition Was Created By The Wrongful Act And Omissions Of The Defendant's Employees

D. The Defendant's Motion For Summary Judgment Should Have Been Denied Because The [Inferences] of Fact Weighed In the Plaintiff's Favor Would Allow A Jury To Find That The Defendant Had Actual And/Or Constructive Notice Of The Dangerous Condition Existing On Its Property

E. The Defendant's Motion For Summary Judgment Should Have Been Denied Because The [Inferences] of Fact Weighed In the Plaintiff's Favor Would Allow A Jury To Find That The Defendant's Failure To Protect Against The Dangerous Condition Existing On Its Property Was Palpably Unreasonable

We review a trial court's grant of summary judgment de novo, applying the same standard as the trial court. Conley v. Guerrero, 228 N.J. 339, 346 (2017). Summary judgment must be granted "if the pleadings, depositions,

answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016) (quoting R. 4:46-2(c)). However, if the evidence is conflicting and there are material facts in dispute that a rational jury could resolve in favor of the non-moving party, the motion must be denied. Mangual v. Berezinsky, 428 N.J. Super. 299, 308-09 (App. Div. 2012). All reasonable inferences must be resolved in favor of the party opposing summary judgment. Mem'l Props., LLC v. Zurich Am. Ins. Co., 210 N.J. 512, 524 (2012).

N.J.S.A. 59:4-2 states:

> A public entity is liable for injury caused by a condition of its property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:
>
> > a. a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or
> >
> > b. a public entity had actual or constructive notice of the dangerous condition under section 59:4-3 a sufficient time prior to the

> injury to have taken measures to protect against the dangerous condition.
>
> Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.
>
> [(emphasis added).]

N.J.S.A. 59:4-1(a) defines a "dangerous condition" as "a condition of property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used." To pose a "'substantial risk of injury' a condition of property cannot be minor, trivial, or insignificant. However, the defect cannot be viewed in a vacuum. Instead, it must be considered together with the anticipated use of the property . . . ." Atalese v. Long Beach Twp., 365 N.J. Super. 1, 5 (App. Div. 2003).

The phrase "used with due care" means an "objectively reasonable" use. Garrison v. Twp. of Middletown, 154 N.J. 282, 291 (1998). "A use that is not objectively reasonable from the community perspective is not one 'with due care.' To this extent, 'used with due care' refers not to the conduct of the injured party, but to the objectively reasonable use by the public generally." Ibid.

"Whether property is in a 'dangerous condition' is generally a question for the finder of fact." Vincitore v. N.J. Sports & Exposition Auth., 169 N.J. 119,

123 (2001). A court, however, may properly decide whether property is in a dangerous condition under N.J.S.A. 59:4-1(a) where it determines a reasonable factfinder could not find the plaintiff established the property was in a dangerous condition. Id. at 124.

We conclude that the trial court erred in resolving the issue whether a dangerous condition existed as a matter of law. Although the condition was never measured, a jury could reasonably consider plaintiff's personal observation, expert report, and photographs to determine whether the condition was dangerous. Plaintiff's deposition testimony and Charles J. Witczak, III, P.E.'s expert report describe a hole that is approximately eight inches deep. Specifically, Witczak explained the hole was approximately twelve to eighteen inches long and six to eight inches wide based on the features and proximity of the measured trench and adjacent inlet grating. According to Witczak, the size of the hole greatly exceeded the maximum allowed change in levels of walkways, which is one quarter inch. Witczak also reported that there was a cross slope of between twenty and twenty-five percent, which is hazardous and significantly greater than the typical maximum roadway section cross slope of roughly three percent.

A-2207-20

Additionally, there were facts to support a conclusion that plaintiff was using the property with due care. Plaintiff testified that he was forced to walk in the roadway because there are no sidewalks in the area. Plaintiff was not proceeding in the face of known danger because he stated the hole was covered by leaves. It is foreseeable that there would be leaves on the ground in November and that those leaves would collect at the edges of the street.

"[A] public entity is 'immune from tort liability unless there is a specific statutory provision' that makes it answerable for a negligent act or omission." Polzo v. Cnty. of Essex, 209 N.J. 51, 65 (2012) (quoting Kahrar v. Borough of Wallington, 171 N.J. 3, 10 (2002)). "Whether a public employee created a dangerous condition through negligent acts or omissions may be an issue of fact that must be decided by a jury." Tymczyszyn v. Columbus Gardens, 422 N.J. Super. 253, 264 (App. Div. 2011).

In his opinion the judge stated, "there is no evidence whatsoever that the claimed negligence caused the condition," however, this conclusion conflicts with the evidence suggesting that Gallo's repair work in 2015 created the condition. Witczak's expert report opined Gallo negligently repaired the storm drain inlet in 2015. Witczak explained the repair was improper because Gallo should have dug down three to four feet to correctly conduct the repair. He

concluded Gallo's failure to dig far enough down or properly compact the subbase created a hazardous condition in the walking surface that caused plaintiff's injury.

Further, according to Jody F. DeMarco, P.E., defendant's expert, if the area was repaired negligently in 2015, then the roadway surface would continue to deteriorate resulting in an observable sinkhole, which DeMarco stated did not happen. DeMarco, relying on his expertise in human factor, principally opined that an overweight man wearing sandals should not be walking on town roadways to find a lost dog even if there are no sidewalks. The conflicting expert reports further demonstrate that there is a genuine issue as to whether the repair in 2015 was done negligently and whether that alleged negligence caused the condition.[1]

Finally, to establish palpably unreasonable behavior, a plaintiff has a "steep burden" to prove "more than ordinary negligence." Coyne v. State Dep't of Transp., 182 N.J. 481, 493 (2005). "'[P]alpably unreasonable' implies 'behavior [by a public entity] that is patently unacceptable under any circumstance' and that 'it must be manifest and obvious that no prudent person

---

[1] Because there are sufficient questions of fact as it relates to Gallo's actions in 2015, we need not resolve whether there was notice as a matter of law. See N.J.S.A. 59:4-2.

would approve of its course of action or inaction.'" Holloway v. State, 125 N.J. 386, 403-04 (1991) (quoting Kolitch v. Lindedahl, 100 N.J. 485, 493 (1985)). An analysis of whether a public entity's behavior is palpably unreasonable involves "not only what was done" but also the entity's "motivating concerns." Schwartz v. Jordan, 337 N.J. Super. 550, 563 (App. Div. 2001). "Simply put, the greater the risk of danger known by the Township and sought to be remedied, the greater the need for urgency." Ibid.

Whether a public entity's behavior was palpably unreasonable is generally a question of fact for the jury. See Vincitore, 169 N.J. at 130. A determination of palpable unreasonableness, however, "like any other fact question before a jury, is subject to the court's assessment whether it can reasonably be made under the evidence presented." Black v. Borough of Atl. Highlands, 263 N.J. Super. 445, 452 (App. Div. 1993). Accordingly, "the question of palpable unreasonableness may be decided by the court as a matter of law in appropriate cases." Maslo v. City of Jersey City, 346 N.J. Super. 346, 350 (App. Div. 2002).

Here, the condition was allegedly large enough for a foot to step down into, causing the person to fall to one knee. It was located on a road with no sidewalks. Further, defendant knew of numerous other potholes along Chestnut Street and could have discovered this condition while repairing the other holes.

14

There is evidence the town does not properly repair roadway defects. Thus, there is a question of fact on the issue of palpable unreasonableness.

To the extent we have not addressed the parties' remaining arguments, we conclude that they are without sufficient merit to warrant discussion in a written opinion. See R. 2:11-3(e)(1)(E).

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2207-20